UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| JOYCE JUDY, | ) |
|     Plaintiff, | ) **ANSWER** |
| | ) **TO SECOND AMENDED** |
| v. | ) **COMPLAINT** |
| | ) **AND** |
| ROBERT E. SCHACHT, | ) **COUNTERCLAIM** |
|     Defendant. | ) |
| | ) No. 5:11-cv-189 |

The Defendant, responding to the allegations in the Second Amended Complaint of the Plaintiff, answers as follows:

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted. Defendant specifically states that said consent does not operate as a waiver to dispute any and all of the allegations in this Second Amended Complaint.

## FACTS

5. The Defendant admits that Plaintiff and Defendant discussed the purchase of a racetrack in Iowa during 2009. The Defendant specifically states that Chuck Walker ("Walker") introduced the Plaintiff to Defendant. The Plaintiff was responsible for supplying all of the funds for the purchase of the racetrack. The Defendant is a former NASCAR and

ARCA racecar driver and staked his name and reputation to further advance the purchase. All other allegations in paragraph 5 are denied.

6. Admitted.

7. It is admitted that Mr. Schacht and Ms. Judy intended to create a partnership along with Chuck Walker in which the Plaintiff would quit her job and make money as a CEO of the racetrack. The remaining allegations in paragraph 7 are a statement of law to which no response is required. To the extent that a response is required, Defendant states that he acted in good faith in all his dealings with Ms. Judy. All other allegations in paragraph 7 are denied.

8. Denied. Walker introduced Emlyn Mousely ("Mousely"), who, upon information and belief, is a financial trader in the United Kingdom, to the Plaintiff for the purpose of using the initial investment of capital by Plaintiff to raise additional funds in the United Kingdom to fund the purchase of the racetrack. Defendant specifically denies any knowledge as to the business of financial trading or that he came up with any of the ideas to raise money for the racetrack.

9. Denied. It was Plaintiff who opened up the bank account; it had not already been opened by Defendant.

10. Denied as stated. Plaintiff was actively involved in the financial transactions at issue and therefore it is a mischaracterization to state that "Mr. Schacht stated" something as if he were the source of information known to Ms. Judy. Defendant did not possess or provide any independent knowledge or information to the Plaintiff as to how Mousely would verify or actually use any funds.

11. Denied. Plaintiff was actively involved in the financial transactions at issue and therefore it is a mischaracterization to state that "Mr. Schacht promised" something as to the use of the funds. Defendant did not possess or provide any independent information to the Plaintiff as to how Mousely would actually use any funds.

12. It is admitted that Walker and Mousely initially informed the Plaintiff that Mousely would verify the existence of the One Million Dollars by "pinging" the account. At a later date, Mousely informed Plaintiff and Defendant that "pinging" the account was no longer sufficient to verify the amount and continue the foreign trading. All other allegations in paragraph 12 are denied.

13. Defendant admits that the money in the account was not "his," in that the funds were deposited Ms. Judy, partly from money that was not "hers" because she extorted it from others. To the extent that this paragraph alleges that Defendant could not do anything at all with the funds, that is expressly denied. Exhibit A and its terms speak for themselves and Defendant specifically states that the statement was drafted by Plaintiff according to her terms, including the language that Defendant would not "withdraw" any funds. It is expressly denied that the Defendant had no rights to the account, because it was a joint account. In addition to Exhibit A, Plaintiff instructed Bank of America to place an administrative hold on the account so that Defendant could not withdraw and funds without her removing the hold and providing her express permission. Defendant did not withdraw the funds or ever hold the funds himself, but transferred them under the explicit instructions of the Plaintiff and Mousely. Furthermore, the statement was modified, rescinded, and/or rendered moot and inapplicable when Mousely informed Plaintiff and Defendant that "pinging" the account was no longer sufficient to verify the amount and

continue the foreign trading and instead that Mousely required the funds to be transferred to his account. All other allegations in paragraph 13, to the extent that they require a response, are denied.

14. Denied as stated.

15. It is admitted that neither Mr. Schacht—nor Ms. Judy, upon information and belief—met met Mr. Mousely in person. It is denied that Mr. Schacht never told Ms. Judy whether he had met Mr. Mousely in person or had a face-to-face conversation with him. Defendant lacks knowledge as to what Plaintiff means in alleging is that he did not know Mr. Mousely "well," and therefore that allegation is denied. Assuming that the "third-party" referred to in this paragraph is Chuck Walker, Defendant denies that he only knew about Mr. Mousely from what a third party told him and what Mr. Mousely told him about himself. Defendant admits that he never conducted any independent investigation about Mr. Mousely, nor was he asked to by Plaintiff, who was comfortable with Mr. Mousely and the transactions contemplated. The Defendant denies any further allegations about a "third-party" without specific reference to who that "third party" is. To the extent that this paragraph implies or avers that Mr. Schacht was not open and honest with Ms. Judy about the nature of the purported transactions or that he breached some duty by not "investigating" anything further, those allegations are specifically denied.

16. It is admitted upon information and belief that on or about October 29, 2009, Plaintiff wired One Million Dollars into a Bank of America joint checking account which Plaintiff and Defendant had jointly opened in their names. Defendant specifically denies that he provided any instructions to Plaintiff and instead that Plaintiff was a willing and

knowledgeable instigator of the financial transaction described. All other allegations in paragraph 16 are denied.

17. The Defendant lacks sufficient information to form a belief as to the ownership of one half of the money deposited. The Defendant specifically states that $500,000 of the money deposited was not owned by the Plaintiff. All other allegations in paragraph 17 are denied.

18. Admitted upon information and belief.

19. Admitted upon information and belief.

20. The Defendant admits that Exhibit B appears to be a true copy of a Judgment of Conviction. The Defendant admits the remaining allegations in paragraph 20 upon information and belief.

21. Defendant denies that Plaintiff had any right of possession to the $500,000 she admits in her Complaint, her First Amended Complaint, her Second Amended Complaint, and by her guilty plea in federal court that she obtained by bank fraud. Defendant therefore denies that Plaintiff had a "superior" right of possession to the Defendant. Defendant had right to some of the funds by virtue of the joint business venture entered into by the Plaintiff and the Defendant and the fact that the funds were in a joint account in the names of both Plaintiff and Defendant, which granted Defendant certain possessory rights to the funds. Defendant also possessed a right to use the funds as Ms. Judy knowingly and willingly agreed to allowed them to be used and under the terms of any agreement with the bank. Defendant lacks sufficient information to form a belief as to any other party's right of possession to the funds deposited by the Plaintiff and therefore the remaining allegations in paragraph 21 are denied.

22. Denied.

23. Defendant admits that on or about November 18, 2009, and only upon the express consent, permission, and direction of the Plaintiff, he transferred One-Million Dollars with further instructions by Emlyn Mousely and Chuck Walker. Defendant specifically states that Plaintiff authorized him to make the transfer and was only physically able to make the wire transfer once Plaintiff expressly consented and Plaintiff instructed Bank of America to remove the administrative hold that was on the account. Defendant specifically denies that he "withdrew" any funds. Defendant specifically denies that Plaintiff neither knew about nor approved of the transfer of funds. All other allegations in paragraph 23 are denied.

24. Denied.

25. Denied. Defendant specifically denies that he took "ownership" of any funds, but instead did as Plaintiff directed him to do.

26. Denied.

27. Denied.

28. Without further clarification as to what "agreement" is being referred to, Defendant denies all the allegations in paragraph 28. Defendant specifically denies that he entered into any agreement with "the currency trader," again, a party which is not specifically identified in Plaintiff's Second Amended Complaint.

29. As stated, without specific reference to who the "currency trader" is and what the "agreement" was, Defendant denies all allegations in paragraph 29 of the Complaint.

30. It is admitted that Mr. Schacht transferred the One Million Dollars from the Bank of America account in his and Ms. Judy's name with her consent and direction. All other allegations in paragraph 30 are denied.

## "Count I"

### Conversion of $1,000,000

1. The Defendant alleges and incorporates all his answers above as if fully set forth herein.
2. Denied.

## "Count II"

### Conversion of $500,000 and Trover of $500,000

3. The Defendant alleges and incorporates all his answers above as if fully set forth herein.
4. Denied.
5. Denied.

## "Count III"
### Breach of Fiduciary Duty

6. The Defendant alleges and incorporates all his answers above as if fully set forth herein.
7. The allegations in Paragraph 7 of the Second Amended Complaint are a statement of law to which no response is required. To the extent that a response is required, all allegations in paragraph 7 are denied.
8. To the extent there was a fiduciary duty, which Defendant denies, Defendant denies that he breached said duty.
9. Denied.
10. Denied.

## "Count IV"
## Constructive Fraud

11. The Defendant alleges and incorporates all his answers above as if fully set forth herein.

12. The allegations in Paragraph 12 of the Second Amended Complaint are a statement of law to which no response is required. To the extent that a response is required, all allegations in paragraph 12 are denied.

13. Denied.

14. Denied

15. Denied.

## "Count IV"
## Constructive Fraud

16. The Defendant alleges and incorporates all his answers above as if fully set forth herein.

17. Denied.

18. Denied.

19. Denied.

20. Denied.

21. Denied.

## First Affirmative Defense
Statute of Limitations

The Claims of the Plaintiff are barred in whole or in part by the applicable statute of limitations.

## Second Affirmative Defense
Estoppel

The Plaintiff expressly authorized the actions of the Defendant by word and conduct in transferring any funds from the account and therefore she is estopped from asserting any claims

to those funds. Furthermore, once the funds were transferred, Plaintiff did not assert any claim against Defendant or Walker and continued in a friendly relationship with them, never asserting that she did not authorize the transfer until she was in danger of criminal prosecution and losing her job.

### Third Affirmative Defense
Fraud

During the negotiations and planning for the purchase of the racetrack, the Plaintiff represented to the Defendant that she would deposit her own funds into the joint checking account. Plaintiff knew that such a representation was false at the time she made it, because the funds that Plaintiff deposited into the account were admittedly procured by fraud. The Plaintiff made such false representations with the intent to deceive the Defendant and the Defendant was in fact deceived and opened the joint checking account with the Plaintiff and loaned his name and reputation to the joint enterprise. Plaintiff knew that the entire transaction required that at least one-million dollars be deposited in the account and Defendant never would have agreed to put his name on the joint account had he known that the funds in the account were procured by fraud. The Plaintiff procured the business opportunity to purchase and profit from the racetrack and increase her personal funds from the investment of those funds. The entire transaction giving rise to the allegations in the Amended Complaint is void because of the fraud of the Plaintiff and the Defendant has been damaged by the fraud of the Plaintiff.

### Fourth Affirmative Defense
Laches

Plaintiff is guilty of laches in not commencing this action within a reasonable amount of time. The Plaintiff was, or should have been, aware that the funds would be transferred immediately

upon her authorizing the release of the administrative hold and her explicit instructions to make the wire transfer. By her complaint, the wire transfer took place on November 18, 2009. The funds were transferred to a foreign bank account upon the instructions of the Plaintiff and the Defendant has been prejudiced by the delay in bringing this action because he had no notice to pursue those funds or make further inquiry once the funds were transferred overseas. The Plaintiff instead did not allege or pursue any claims against Defendant or any other possible culpable party. Instead, the Plaintiff pursued remedies against Mousely and other foreign parties and even hired a foreign law firm to pursue Mousely to the exclusion of Defendant. The Defendant is further prejudiced by the delay in bringing suit in that, upon information and belief, there may be shorter statutes of limitations for international transactions and he may be barred from bringing cross-claims, interpleading, or third-party complaints because of the delay. Defendant has been further prejudiced by the unreasonable delay in that any defense involving international banking law is now more difficult to investigate and mount.

### Fifth Affirmative Defense
License

Defendant was licensed by Plaintiff to make the wire transfer as complained of in the Amended Complaint and the acts of the Defendant, to the extent that Defendant has admitted any acts herein, were done under the guidelines of and in pursuance of that license.

### Sixth Affirmative Defense
Waiver

Plaintiff has waived all rights she may have had to pursue the claims upon which this action is based on the basis that she expressly authorized the Defendant to make the wire transfer and on the basis that he could only make that wire transfer after she removed the administrative hold

from the account and rescinded or modified any instructions preventing Defendant from doing so.

### Seventh Affirmative Defense
Lack of Consideration

Additionally or alternatively, the statement of Defendant in Exhibit A upon which this action is partly based was not supported by valid consideration in that the Plaintiff did not make a promise, did not give up any right, and did not provide any benefit to the Defendant in exchange for Defendant signing the statement. This failure of consideration bars any recovery from Defendant to the extent that it is based on any contract shown by Exhibit A.

### Eighth Affirmative Defense
Illegality

Additionally or alternatively, to the extent that this action is based in contract, that contract upon which this action is based is illegal in that the Plaintiff admits that she obtained funding for the enterprise by the criminal activity of bank fraud. The contract is thus invalid and unenforceable and this action is barred.

### Ninth Affirmative Defense
Unclean Hands

To the extent that any of the Plaintiff's claims sound in equity, Plaintiff is barred from bringing those claims because she came into the relationship with Defendant with unclean hands, based on her fraud and illegal conduct.

### COUNTERCLAIM

By way of further answer and Counterclaim, the Defendant alleges the following:

## FIRST CLAIM FOR RELIEF
Breach of Contract / Parol Partnership

1. The allegations set forth in the paragraphs above are realleged and incorporated by reference as if fully set forth herein.

2. Plaintiff and the Defendant had an express oral contract creating a parol partnership for a business enterprise in which Plaintiff would supply funds to purchase a racetrack and Defendant would loan his name and reputation to help negotiate the purchase of the racetrack. Plaintiff and Defendant agreed that Defendant would manage and operate the racetrack after its purchase and share in the profits with the Plaintiff.

3. Plaintiff deposited funds into a joint account at Bank of America with Defendant for the benefit of the partnership and to invest to create further funds for the purchase of the racetrack.

4. Plaintiff and Defendant agreed that Defendant would not withdraw the funds from the joint account for his personal use without the express permission of the Plaintiff. Plaintiff also placed an administrative hold on the joint account to further protect the funds until used for investment and eventual purchase of the racetrack.

5. Once Plaintiff was informed that the funds would need to be transferred by wire to the United Kingdom for investment, Plaintiff and Defendant modified and/or rescinded the terms of the contract with the Defendant by Plaintiff releasing those funds from the administrative hold and Plaintiff expressly instructing Defendant to make the wire transfer.

6. The Plaintiff now admits that the funds she deposited were obtained by bank fraud and that she has pled guilty to bank fraud for her actions in obtaining those funds.

7. The Plaintiff breached the contract, breached the covenant of good faith and fair dealing, and violated the parol partnership by endangering the Defendant's name and reputation when she placed funds that were obtained by bank fraud into the joint account with Defendant's name on the account.

8. The Defendant has been damaged by the Plaintiff's breach of contract, breach of the covenant of good faith and fair dealing, and breach of the parol partnership agreement in an amount to be proven at trial for his lost profits on the potential racetrack enterprise, his loss of time, and damage to his reputation in the business community.

## **SECOND CLAIM FOR RELIEF**
Fraud

9. The allegations set forth in the paragraphs above are realleged and incorporated by reference as if fully set forth herein.

10. During the negotiations and planning for the purchase of the racetrack, the Plaintiff represented to the Defendant that she would deposit her own funds into the joint checking account.

11. Plaintiff knew that such a representation was false at the time she made it, because the funds that Plaintiff deposited into the account were admittedly procured by fraud.

12. The Plaintiff made such false representations with the intent to deceive the Defendant and the Defendant was in fact deceived and opened the joint checking account with the Plaintiff and staked his name and reputation in the joint enterprise. The entire transaction required that at least one-million dollars be invested in the account and Defendant never would have agreed to put his name on the joint account or enter into the parol partnership

agreement with Plaintiff had he known that the funds in the account were procured by fraud.

13. By and through her fraudulent actions, the Plaintiff procured the business opportunity to purchase and profit from the racetrack and realize an increase in her personal funds from the investment of those funds.

14. The Defendant was damaged by the fraud of the Plaintiff in that:

    a. His business reputation in the racing and racetrack ownership community was damaged because of his tangential involvement in the fraud of the Plaintiff and his inability to follow through with the racetrack purchase after he put his name and reputation forward to support a purchase that eventually was discovered to be funded by stolen funds;

    b. He lost potential future earnings because of the damage to his reputation and inability to make future investments or participate in enterprises such as the purchase of the racetrack.

## THIRD CLAIM FOR RELIEF
Constructive Fraud

15. The allegations set forth in the paragraphs above are realleged and incorporated by reference as if fully set forth herein.

16. Plaintiff obtained a relationship of trust and confidence with Defendant by:

    a. Using her position as president of Arkansas Employees Federal Credit Union to convince Defendant that she was knowledgeable and ethical in financial matters;

    b. Convincing Defendant that she was seriously interested in pursuing the purchase of the racetrack, which was a multi-million dollar enterprise;

c. Exercising control over the Defendant by not allowing him to withdraw the funds in the joint account and by making it clear to Defendant that the funds were hers to administer—in part by placing the administrative hold on the account;

d. Releasing the administrative hold on the joint account and giving Defendant permission and authorization to transfer the funds from the joint account.

17. Plaintiff's actions led up to and surrounded the consummation of transactions which Plaintiff took advantage of to the hurt of the Defendant, including, but not limited to:

    a. Misleading Defendant into loaning his name and reputation to the joint enterprise;

    b. Misleading Defendant into allowing his name to be placed on a joint account that held fraudulently obtained funds;

    c. Willfully withholding information from Defendant to inappropriately and undeservedly benefit from the use of funds that were not hers and by damaging the business reputation of Defendant.

18. Defendant has been damaged by the constructive trust of the Plaintiff in an amount to be proven at trial in that, among other things:

    a. His business reputation in the racing and racetrack ownership community was damaged because of his tangential involvement in the fraud of the Plaintiff and his inability to follow through with the racetrack purchase after he put his name and reputation forward to support a purchase that eventually was discovered to be funded by stolen funds;

    b. He lost potential future earnings because of the damage to his reputation and inability to make future investments or participate in enterprises such as the purchase of the racetrack.

WHEREFORE, Defendant prays the court as follows:

a. That the Plaintiff have and recover nothing of the Defendant;

b. For a judgment against the Plaintiff in an amount to be proven at trial for the actual damages and consequential damages resulting from the Plaintiff's breach of contract, fraud, and/or constructive fraud;

c. For punitive damages for the fraud and/or constructive fraud of the Plaintiff;

d. That the Defendant be awarded his costs and attorney's fees in this action based on his own counterclaims;

e. That the Defendant be awarded his costs and attorney's fees under N.C. Gen. Stat. § 75-16.1 because the Plaintiff knows that this action is frivolous and malicious;

f. For a trial by jury on all claims brought by the Plaintiff;

g. For any and all other relief as may be deemed appropriate.

This the 8th day of May, 2014.

By: s/William E. Morgan
William E. Morgan
NC Bar # 35459
Morgan Law, PLLC
200 First Avenue NW, Suite 531
Hickory, NC 28601
828-855-3212
morgan@morganlaw.org
*Attorney for Defendant*

# CERTIFICATE OF SERVICE

THE UNDERSIGNED HEREBY CERTIFIES that I electronically filed the foregoing **Defendant's Answer to Second Amended Complaint and Counterclaim** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Peter Drake Mann
GILL ELROD RAGON OWEN & SHERMAN, P.A.
425 West Capitol Avenue, Suite 380
Little Rock, Arkansas 72201
*Attorney for Plaintiff*


Joan M. Waldron
HUFFMAN DANTISM & WALDRON, PLLC
216 North McDowell Street, Suite 204
Charlotte, NC 28204
*Attorney for Plaintiff*

This the 8th day of May, 2014.

By: s/William E. Morgan
William E. Morgan
NC Bar # 35459
Morgan Law, PLLC
200 First Avenue NW, Suite 531
Hickory, NC 28601
828-855-3212
(f) 828-855-3214
morgan@morganlaw.org
*Attorney for Defendant*